## Bartholomew's Administrator *versus* Bartholomew *et al.*

*Insolvent debtors.—Provisions of insolvent laws must be strictly complied with.*

1. Under the provisions of the insolvent laws, the debtor seeking relief, and he only, is bound to keep in motion the proceedings which are to result in his discharge : and if he fail to do so, or to surrender himself to prison, the condition of his bond is forfeited.

2. Thus where, after bond given by an insolvent debtor, conditioned that he should appear at the next Court of Common Pleas and present his petition for the benefit of the insolvent laws, the petition was duly presented, but by mistake no hearing was fixed, it was the duty of the debtor to have appeared at the next term thereafter, and to have had a day for a hearing appointed : and where no further proceedings after the presentment of the petition were had, the condition of the bond was forfeited and his creditor became entitled to payment therefrom.

Error to the Common Pleas of *Lancaster county*.

This was an action of debt by John Smith, administrator of Esther Bartholomew, deceased, against Matthew Bartholomew and Charles Edwards, in which the following case was stated for the opinion of the court :—

Matthew Bartholomew, one of the above defendants, was administrator of the estate of David Herr, late of Strasburg township, deceased, and as such administrator received into his hands the estate of said deceased. Esther Bartholomew, plaintiff's intestate, was a distributee of said David Herr, deceased, and died before his estate was distributed ; whereupon letters of administration upon her estate were duly granted to plaintiff. On the 22d of December 1858 plaintiff obtained a decree in his favour in the Orphans' Court, against the said Matthew Bartholomew, administrator as aforesaid, for the share of his intestate, amounting to $1249.63 debt, and $48.75 costs. On the 24th of December 1860 an attachment was issued out of the Orphans' Court upon said decree, against the said Matthew Bartholomew, and on the 14th of February 1861 he was brought into court by the sheriff, by virtue of said attachment. On the same day, having made application for a discharge under the insolvent laws, and having filed his bond, the court discharged him from the custody of the sheriff.

The following is a copy of the bond of Matthew Bartholomew with Charles Edwards, his surety, presented to the court as aforesaid, and filed and approved by the court on the 14th of February 1861 :

" Know all men by these presents, that we, Matthew Bartholomew and Charles Edwards, are held and firmly bound unto John Smith, administrator of Esther Bartholomew, in the sum of $2000 lawful money of the United States to be paid to the said John

[Bartholomew's Administrator *v.* Bartholomew *et al.*]

Smith, administrator aforesaid, his certain attorney, executors, administrators, or assigns, for which payment well and truly to be made we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents.

" Sealed with our seals, dated the 14th day of February, in the year of our Lord 1861.

" Whereas, the above-bounden Matthew Bartholomew, at the suit of the said John Smith, administrator, a decree hath been made against said Bartholomew in the Orphans' Court, for the sum of $1249.63 debt, and $48.75 costs; and the said Matthew Bartholomew having made application to the judges of the Court of Common Pleas of the county of Lancaster, to give bond with sufficient security, to comply with the provisions of the Act of General Assembly of the Commonwealth of Pennsylvania, passed the 16th day of June, A. D. 1836, entitled 'An Act relating to Insolvent Debtors.' And the said judges having approved of the above-named Charles Edwards as security for the said Matthew Bartholomew. Now the condition of the above obligation is such, that if the said Matthew Bartholomew shall appear at the next term of the Court of Common Pleas of the said county, and then and there present his petition for the benefit of the insolvent laws of this Commonwealth, and comply with all the requisitions of the said law, and abide all the orders of the said court in that behalf; or in default thereof, and if he fail in obtaining his discharge as an insolvent debtor, that he shall surrender himself to the jail of the said county, then this obligation to be void, otherwise to be and remain in full force and virtue.

(Signed)          " MATTHEW BARTHOLOMEW. [SEAL.]
                  " CHARLES EDWARDS.       [SEAL.]
" Sealed and delivered in the presence of
     O. J. DICKEY."

The following is a copy of the docket entries in the matter of the application of said Bartholomew to the Court of Common Pleas for a discharge under the insolvent laws, in Trust-Book No. 3, page 334:—

" February 14th 1861. Bond of Matthew Bartholomew with Charles Edwards as surety, in the sum of $2000, presented and approved by the court."

" April 15th 1861. Petition presented by O. J. Dickey, Esq., and hearing fixed by the court the          day of          next, at 10 o'clock, A. M., and direct publication to be made."

No other entries were ever made on the docket; no publication was made and no further proceedings were had in the matter.

This suit on the bond was commenced on the 11th day of January, A. D. 1862.

[Bartholomew's Administrator *v.* Bartholomew *et al.*]

The original bond and records are to be considered a part of this case stated.

If upon the above facts the court are of opinion that the plaintiff is entitled to recover, judgment is to be rendered in his favour for the penal sum of $2000, and his damages shall be assessed by the court for $1307.63, with interest from the 22d of December 1858 and costs of suit, and if plaintiff is not entitled to recover, then judgment to be for defendant.

Parties reserve the right to sue out a writ of error.

The court below (LONG, J.), on hearing the case, delivered the following opinion:—

"Matthew Bartholomew having been arrested by process issuing out of the Orphans' Court of this county, by reason of having made default in complying with a degree of the said court, ordering him, as administrator of the estate of David Herr, deceased, to pay to J. Smith, administrator of Esther Bartholomew, deceased, who was a distributee of the estate of said David Herr, deceased, a certain sum of money; whereupon he entered into a bond with Charles Edwards, as his surety, in the sum of $2000. The condition whereof was, that the said Matthew Bartholomew should appear at the (then) next term of the Court of Common Pleas of the said county, and then and there present his petition for the benefit of the Insolvent Laws of this Commonwealth, and comply with all the requisitions of the said law, and abide all the orders of the said court in that behalf, or in default thereof, and if he fail in obtaining his discharge as an insolvent debtor, that he shall surrender himself to the jail of the said county, then such obligation to be void. This bond, on the 14th February 1861, was approved by the court, and on the 15th April 1861, his petition for the benefit of the Insolvent Laws was presented, and according to an endorsement on the petition, an indefinite time was fixed for his hearing, which in fact amounted to nothing. How this omission to fix a definite time, which is the practice of the court, occurred, does not appear. The court has no standing rule in regard to the time when insolvent petitions are to be heard, or in regard to the publication of the same, except the following:—
'September 26th 1857. The court direct the following be made a rule of court, that all applications for the benefit of the Insolvent Laws be published for three successive weeks in one German and two English newspapers, printed in the county of Lancaster.' This rule was not referred to on the argument of this case, and I presume has no bearing upon it, for it evidently was intended to apply to cases where the time of hearing had been designated by the court. It was, however, contended at the argument that it was the duty of Bartholomew to see that the necessary order was made, and to obtain his discharge, or to surrender himself to jail in default thereof, and having failed to do so, that

[Bartholomew's Administrator *v.* Bartholomew *et al.*]

the condition of the bond was forfeited, that he ought to have been the actor in the case. The practice of our court doubtless is, when a petition is presented to ask the court to fix a time for the hearing of the petition; but supposing this was not done, or the court should fix an indefinite time, would this work a forfeiture of the bond? I think not. The petitioner was bound by the conditions of the bond to comply with the requisitions of the law, and abide the order of the court; but if no order was made, or one which it was impossible to fulfil, the non-performance of it would not mulct him in the penalty of the bond. He has done everything which the letter of the law required of him, and the liability of sureties will never be extended by implication, but the condition will in general be construed strictly in their favour. It was as much in the power of the creditor interested in the bond to have the time fixed for the hearing by applying to the court, as the debtor. The right of the creditor to sue the insolvent bond, in my opinion, did not attach until the petitioner failed to present his petition, or failed to comply with the order of the court, or surrender himself according to the conditions of the bond. In the case of Claxton, 1 Ash. 102, Judge King intimates an opinion, that the law requires a petitioner to be discharged at the same term at which the petition is presented, unless the cause should be regularly postponed by the court beyond the term to which the petition is presented. This opinion, however, was predicated upon the former Insolvent Laws, and the conditions of the bond required by that law were somewhat different from the one required by the present law; besides, the Supreme Court has decided that the time for the surrender is the day fixed for the hearing of the case, should the court on that day refuse to discharge the prisoner. I am therefore of opinion that the case falls within the principle of law, which holds that if a condition of a bond be possible at the time of making it, and afterwards becomes impossible by the act of the law, then the penalty of obligation is saved: 2 Bl. Com. 340.

"We therefore direct judgment to be entered for the defendant on the case stated."

Which was the error assigned.

*D. G. Eshleman*, for plaintiff in error.—The bond in suit was presented and approved by the court on the 14th of February 1861.

The record shows that on the 15th of April 1861, petition was presented and hearing fixed by the court the    day of next, at 10 o'clock A. M., and publication was directed to be made. No further or other proceedings were had. It is evident that the condition was not complied with. The bond was therefore forfeited, unless it appear that the defendants were in no default.

It was not the duty of the plaintiff to see that the record should

[Bartholomew's Administrator *v.* Bartholomew *et al.*]

contain the proper entries, and that Bartholomew should comply with the condition. He was not a party in the application for discharge. He had no control over it. The law obliged him to take the bond in place of the security which he held—the person of the petitioner. But it enforced no duty upon him further than to look to his bond. Nor was it the duty of the court. The court make their orders, and it is for the parties to see that they are enforced. The court could not go to the prothonotary's office to see whether the blanks were properly filled, and to the printer's office to inquire whether the proper notice was given. The law makes it the duty of the court to fix a time for hearing, and the presumption is that the court did its whole duty in the matter; that they fixed a time, and that the defendants undertook to give the proper instruction to the clerk, and failed to do so. It was the duty of the obligors of the bond alone to see that the condition was complied with. Did they see that the requisitions of the law were complied with? Did they see that the proper time was fixed by the court, and a proper record thereof was made? Did they see that there was a publication of notice of the time and place of hearing? It is clear that petitioner did not obtain his discharge. Did they surrender him to the jail of Lancaster county?

If there was any neglect, either of the court, of himself, or any other person, in not fixing a proper time for hearing, or in not advertising, it was the duty of the petitioner to have asked the court to fix another time, and obtained an order for a continuance. See McDonough's Case, 1 Wright 276; Heilner *v.* Bast, 1 Penna. Rep. 267; Detweiler *v.* Casselberry, 5 W. & S. 180; Lease *et al. v.* Asper, 2 Rawle 183; Haviland *v.* Hayward, 11 Casey 459; Farmers' Bank of Reading *v.* Boyer, 16 S. & R. 50; Claxton's Case, 1 Ash. 103.

The performance of the condition of this bond did not become impossible by the act of the law. The negligence of the petitioner or of the plaintiff, if he had anything to do with it, or even of the court, if they neglected the duty of fixing a day for the hearing, would not be the act of the law. See Smith *v.* Barker, 6 Watts 508.

*O. J. Dickey*, for defendant in error.—The conditions of an insolvent bond are fixed by the Act of Assembly, and are three in number. 1st. The insolvent shall appear at the next term, and then and there present his petition for discharge; 2d. Abide the order of the court in that behalf; 3d. Or, in default, surrender himself to the jail of the county. And these are the conditions of the bond in suit.

The petition was duly presented, at the proper time and in proper form. The insolvent presented himself, asked for his dis-

[Bartholomew's Administrator v. Bartholomew et al.]

charge, and prayed the court for an order in the premises. The court (having no standing rule in matter of insolvents) made an order impossible of performance. Does the failure to perform an impossibility ordered, render the surety liable ? This is the sole question. The court is to fix the time ; they fix a blank time. If the party fill the blank to suit himself, can it be said the court fixed the time ; and would a party thus fixing a time be entitled to a discharge ? Courts are presumed to do right in all things, but there is no such violent presumption as that they are incapable of mistake, especially in the face of the record and their own declaration that they made one. It was the duty of the petitioner to abide the order of court ; and when he came to obey, he found obedience impossible without fault upon his part.

It is said he did not advertise, and is therefore in fault. Advertise what ? That he would be heard upon his petition for a discharge under the insolvent laws, on blank day of blank, at 10 o'clock, A.M. Plaintiff intimates if there was neglect or mistake of the court, petitioner was responsible. Can this be so ? This case is wholly unlike McDonough's Case, cited by plaintiff, 1 Wright 276. All the cases cited by plaintiff, proceed upon the ground that there has been some neglect or failure on the part of the petitioner, which he had it in his power to avoid. Here there was no neglect, no failure, no bad conduct on the part of the petitioner, but performance became impossible by act of law. Although bonds of this character have always been strictly construed, it has at least been held that the death of the debtor will discharge the surety (10 Watts 228), and it would be just as easy for a dead man to present a petition on a day fixed, as for a live one to have a hearing on the blank day of blank, at 10 o'clock, or at any other hour.

Plaintiff seems to think because he is not in fault, he shall recover. That is not in question. The issue is, did petitioner forfeit his bond through fault of his. The intimation that petitioner did not do all he was bound to do or could do, is repudiated by the court. They say the fault was theirs not his ; he since died insolvent as he was at the time of the presentation of his petition, and there is neither law or equity that will exact this money from the hands of the surety.

The opinion of the court was delivered, May 22d 1865, by

AGNEW, J.—It is not difficult to determine this case, if we keep in view the provisions of the Insolvent Law, and the purpose of the bond given to obtain its benefit. The first section of the Act of 16th June 1836, gives power to grant relief to insolvent debtors, in the manner provided. The mode is for the debtor to come into court, present his application, ask a hearing, give notice of it to his creditors, exhibit the state of his affairs, take the required oath,

[Bartholomew's Administrator *v.* Bartholomew *et al.*]

make an assignment, and ask for his final discharge. In all this, he is the actor and only one to set in motion the machinery of the law, which is to result in his discharge. His creditor performs no part of it, is not bound to appear, and cannot prevent his discharge except by showing that he is not a fit subject of relief. He may appear to do this, but it is not to do an act in furtherance of the discharge but against it. The purpose then is relief, the provisions of the law must be pursued, and the debtor is the only one who sets them in motion and keeps them moving.

The bond is but a part of the machinery. Its purpose is temporary enlargement while prosecuting the necessary measures for relief; and to enable him to prosecute them with more convenience than he could under confinement. Its purpose is also to secure his creditor by compelling him to proceed towards his discharge in due course of law, or to return himself into prison in case he fails to procure his discharge. This being the purpose, it is clear that no construction of the bond can be right which postpones the discharge indefinitely, and at the same time prevents his return into the power of his creditor.

Now, admitting that Matthew Bartholomew, the debtor, appeared and asked a hearing, and that the court by failing to fix a day for it, rendered it impossible for him to give notice to his creditors, and proceed in due course to obtain his discharge, it does not follow that the proceeding must rest there, and no farther duty devolve upon him. If, by the failure of the court, the proceeding has come to a stand, and no duty rests upon him to extricate it from this dead-lock, he has failed to obtain his discharge, and he must perform the alternative by surrendering himself to prison. But if he is unwilling to accept the alternative, and claims his right to keep the proceeding in motion, then clearly his duty is to have the omission of the court corrected at the earliest moment, by asking it to fix a day for his hearing. Supposing that he may fairly deny the forfeiture of his bond at the time when the court, by its omission, prevented his immediate action; yet, being the only actor in the case, and his duty being to go forward in pursuit of the relief, he was bound to come into court at the next term at farthest, and renew his application for a hearing. Indeed it may be—but it is unnecessary to decide this—he was bound to see that a day was fixed for his hearing, or at least a continuance of his application granted. But, certainly, an appearance at the next term was due from him, as the actor seeking a relief he could obtain only by pursuing it, and as a proper measure of protection of his creditors, to whom he had become bound. If we assume that he need not move, and that his total cessation is no failure to procure his discharge, he is set at liberty without any security to his creditor, and may take himself beyond the reach of his process without remedy. This would be a total perversion of the

[Bartholomew's Administrator *v.* Bartholomew *et al.*]

benevolent provision for temporary relief by bond, and would place his creditor in a worse position without fault on his part. We apply to this case, though differing somewhat in circumstances, the precise principle stated by my brother Thompson, in deciding McDonough's Case, 1 Wright 275. Following its indication as harmonizing with the intention of the act, we take a step perhaps in advance, yet in the same direction.

The judgment below is therefore reversed, and we now enter judgment for the plaintiff below for the penal sum of $2000, and assess the damages at $1307.63, with interest from the 22d of December 1858, and costs of suit.